# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ELLIOT M. KNOX, #2926104, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-17-2553 |
| THE STATE OF MARYLAND and <br>   OFFICERS AT THE NORTH BRANCH <br>   CORRECTIONAL INSTITUTION, <br> NANCY K. KOPP, Treasurer, <br> LT. THOMAS SAWYERS, <br> SGT. GREGORY FORNEY, <br> CO II RONALD SAVILLE, <br> CO II MICHAEL WALTERS, <br> CO II JASON FRANTZ, <br> CO II DAVID REED,[1] | * <br><br> * <br><br><br> * <br><br> * <br><br> * <br><br> * | |
| Defendants | | |

***

## MEMORANDUM OPINION

Elliot Knox, a Maryland prisoner incarcerated at North Branch Correctional Institution ("NBCI"), has filed a verified Complaint alleging he was subjected to unnecessary use of excessive force by NBCI officers on May 11, 2017, and thereafter he was falsely charged with an infraction to cover up the officers' misconduct. Knox, who is self-represented, seeks compensatory and punitive damages of $1,000,000 from each correctional officer involved, $200,000 from the State of Maryland under the Maryland Tort Claims Act,[2] and injunctive relief mandating his transfer from NBCI. ECF 1. Knox filed a supplement to the Complaint on May 24, 2018. ECF 30.

---

[1] The Clerk shall amend the docket to reflect the full names of defendants Sawyers, Forney, Saville, Walter, Frantz, and Reed.

[2] Knox sued both the State of Maryland and the State's Treasurer, Nancy K. Kopp. Essentially, Knox seeks to invoke this Court's supplemental jurisdiction as to any tort claims, pursuant to 28 U.S.C. § 1367. As noted herein, Knox will be granted court-appointed counsel. As

Defendants State of Maryland, Sawyers, Forney, Saville, Walters, Frantz, and Reed filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF 22. It is supported by a memorandum (ECF 22-1) (collectively, the "Motion") and numerous exhibits.[3] Defendants also filed a supplement to the motion. *See* ECF 25. Knox opposes the Motion (ECF 26; ECF 26-1) and also moves for emergency injunctive relief. ECF 27; ECF 29.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons noted herein, defendants' dispositive motion shall be GRANTED in part and DENIED in part; Knox's Motion for a Temporary Restraining Order and Preliminary Injunction shall be DENIED; and Knox's previous request for appointment of counsel, denied without prejudice (ECF 10; ECF 24) shall be reconsidered and GRANTED.

## I. Statement of Facts

### A. Mr. Knox

In his verified Complaint, Knox states that on the morning of May 11, 2017, he was called into a poorly lighted holding cell in NBCI's Housing Unit #2 ("HU-2") and questioned by Forney and Saville about a violation of shower rules. ECF 1 at 5. Part way through the conversation, Sawyers entered the cell, aggressively ordered Knox to "get over here," and grabbed Knox's wrist. *Id.* at 5-6. When Knox pulled back, Sawyers ordered Saville to call for assistance. *Id.* at 6. Walters, Frantz, Reed, and other unidentified officers responded, kicking and punching Knox, who had been restrained by Sawyers in a front-facing headlock. *Id.* at 6. Knox, who claims injury to his neck, hands and body, was then charged with a disciplinary infraction. *Id.* at 7.

---

counsel likely will move to amend the Complaint, the Court will not address the propriety of naming these defendants at this time.

[3] Kopp did not join in the Motion.

2

## B. Defendants

Defendants' version of events is presented by way of declarations and verified prison records. They contend that Knox became agitated during the discussion about shower policies, stating "what you all need is a good beat down." ECF 22-3 (NBCI Use of Force ("UOF") Report #17-038) at 3. Saville, Forney, and Sawyers viewed this statement as a threat. *Id.* When ordered by Sawyers to turn around for handcuffing, Knox stood up, walked towards Lt. Sawyers in a threatening manner, then stopped and turned around with his back to Sawyers, who took control of Knox's right wrist. *Id.* Despite orders to turn around for cuffing, Knox passively resisted by refusing to place his hands behind his back. *Id.* Forney and Saville turned Knox while trying to control his arms, to no avail. *Id.* Sawyers pushed Knox down and a struggle ensued, with Sawyers controlling Knox's head and upper body while Forney cuffed Knox's right wrist. *Id.* Walters responded to control Knox's right arm, while Saville and Frantz attempted to control Knox's left arm. *Id*. Frantz struck Knox in the back of the leg with Frantz's right knee while Saville cuffed Knox's left wrist. *Id.*

Knox was escorted to HU-1's strip cage by Forney, Saville, Frantz, Walters, and Reed to await the arrival of medical staff. However, Knox refused medical evaluation. *Id.* at 3, 6 and 18; ECF 22-4 at 4. Knox, who was placed in Cell #1-C-22, was photographed, as were Sawyers, Forney, Saville, and Frantz. ECF 22-3 at 20-23.

The Intelligence and Investigative Division ("IID") was notified via an Officer's Use of Force Incident Report. ECF 22-3 at 3, 14-15. Knox, who refused to write a statement (ECF 22-3 at 17), received a notice of infraction charging him with violating inmate rules #104 (use of threatening language), #312 (interfering with/resisting the duties of staff/refusing to permit a search of a person, item, area or location), and #400 (disobeying a direct lawful order). *Id*. at 16-

17; ECF 22-5 (May 11, 2017, Notice of Infraction and related forms). IID investigator Lt. Patrick Speir avers that, based on his review, the amount of force used by staff during the incident was appropriate, and consistent with all applicable policies as well as the Maryland Department of Public Safety and Correctional Services ("DPSCS") Use of Force Manual. ECF 22-12, ¶15; *see also* ECF 22-3 at 1. Further, defendants declare under oath that their versions of the event and its aftermath are true and accurate. ECF 22-6 through ECF 22-12.

A video recording, referenced in defendants' use of force incident reports, captured the incident. ECF 22-12, ¶ 5; ECF 22-14. On April 10, 2018, this Court directed defendants to provide any video evidence to the Court within 21 days. ECF 24 at 2. In response, defendants stated that the video of the incident no longer exists. ECF 25. Defendants reference their Memorandum in Support of Summary Judgment (ECF 22-1 at 7, 8, 10, and 11-12) and the Declarations of Patrick Speir, Jason Harbaugh, and Christopher Wedlock (ECF 22-14, ¶¶ 7, 11, 14; ECF 22-15, ¶¶ 5-8; ECF 22-16, ¶¶ 6, 14-15, 20-21), asserting the video of the incident was taped over. According to defendants, the loss of the video was inadvertent, due to an error in cataloguing the time of the incident, which allowed the destruction of the necessary video while a video unrelated to the incident was archived and preserved. *Id*.

Nevertheless, defendants contend that Speir was able to view video coverage immediately after the incident (prior to its destruction), and that Hearing Officer Brent also was able to view it at Knox's first scheduled adjustment hearing, set for June 15, 2017. This hearing, however, was postponed because Frantz, a witness, was unavailable. Because the hearing did not occur, the video was not presented as evidence.[4] ECF 22-14, ¶ 10; ECF 22-12, ¶ 12; ECF 22-15, ¶ 6. The

---

[4] Defendants provide an audiotape of the three postponed hearings. ECF 22-14 (filed separately). Although the audio is garbled, the hearing officer clearly states in each instance that

4

adjustment hearing, rescheduled for August 15, 2017, was again postponed so that Sawyers, Forney, and Saville could appear as witnesses. ECF 22-14, ¶ 11; ECF 22-12, ¶ 13; ECF 22-15, ¶ 7.

On January 9, 2018, Hearing Officer Brent requested the video and, when he was advised that the video was unavailable, he dismissed the adjustment charges. ECF 22-14 at ¶17; ECF 22-17. After Brent dismissed the charges, Wedlock submitted a request to Warden Bishop to remand the adjustment proceedings for rehearing. ECF 22-14 at ¶ 9. The request for remand remains pending. ECF 22-14, ¶ 22

## II.  Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 22. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). If the Court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But,

---

he had viewed the video. At no time does the hearing officer discuss his findings regarding the video.

when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x. 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)) "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit … is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is

obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x. at 638.

Knox has not filed an affidavit under Rule 56(d). But, he has consistently argued that a video of the incident, which is known to have existed and has not been preserved, is essential to his case, a point he reiterates in his opposition. ECF 26-1 at 3.[6] The need to conduct additional discovery, given the likely unavailability of the video, is apparent, for reasons noted herein.

Despite the need for further discovery, I am satisfied that it is appropriate to address the Motion, which relies on matters outside the pleadings, as one for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant

---

[6] This Memorandum Opinion cites to the pagination assigned by the Court's electronic docket.

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

 "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Moreover, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Judd*, 718 F.3d at 313. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most

favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

Defendants seeks summary judgment in their favor based on their declarations and exhibits, denying use of excessive force in the incident.[7] They also raise the affirmative defenses of sovereign immunity and qualified immunity.

#### A. Affirmative Defenses

##### 1. Sovereign Immunity

Knox did not specify the capacity governing his claims against defendants. However, the Court shall broadly construe the Complaint as if it were filed against defendants in both their official and individual capacities. When an individual is sued in his official capacity, the suit is essentially against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (noting that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

The Eleventh Amendment prohibits "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It "precludes citizens from bringing suits in federal court against their own states." *Litman v. George Mason Univ.*, 186 F.3d 544, 549 (4th Cir. 1999); *see Wicomico Nursing Home*

---

[7] Defendants also assert that no constitutional protections exist regarding the alleged false disciplinary statements, verbal threats, violations of State regulations, and decisions regarding prisoner classification and transfer, and that Knox's due process rights were protected during the ongoing adjustment proceeding. As these claims arise out of the use-of-force incident that will proceed, the Court declines to consider these assertions at this time.

*v. Padilla*, ___ F.3d ___, 2018 WL 6378291, at *3 (4th Cir. Dec. 6, 2018).

Under Eleventh Amendment jurisprudence, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, official capacity claims are subject to sovereign immunity under the Eleventh Amendment. *Graham*, 473 U.S. at 167; *accord Hafer*, 502 U.S. at 25. Such immunity also extends to state agents and instrumentalities that are an arm of the State. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

Notably, there are three exceptions to Eleventh Amendment immunity. *See Lee-Thomas v. Prince George's Cty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012). "First, 'Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Bd. Of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). Second, the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), applies to a suit against a state official acting in violation of federal law. *Lee-Thomas*, 666 F.3d at 249. Third, a state may waive its Eleventh Amendment immunity. *Id.*; *see Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).

The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts. *See* Md. Code, § 12-202(a) of the State Government Article. But, it has not waived its immunity under the Eleventh Amendment to suit in federal court.

The Supreme Court has carved out a limited exception to Eleventh Amendment immunity in *Ex Parte Young*, 209 U.S. 123 (1908). The *Ex Parte Young* exception to the Eleventh Amendment "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the

Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002); *see Wicomico Nursing Home*, 2018 WL 6378291, at *3.

To the extent that Knox seeks damages under the civil rights statute from defendants in their official capacity, defendants are immune from such damages. *See Fed. Mar. Comm'n v. S. C. State Ports Auth.,* 535 U.S. 743, 760 (2002); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Thus, defendants are entitled to summary judgment in their favor in regard to all damages claims against them in their official capacities.[8]

2. <u>Qualified Immunity</u>

Defendants also assert entitlement to qualified immunity, arguing that their conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

It is well established that qualified immunity shields government officials who commit constitutional violations but who, "in light of clearly established law, could reasonably believe that their actions were lawful." *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Osborne v. Georgiades*, 679 Fed. App'x 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013); *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012); *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2007) (en banc).

In *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 395 (4th Cir. 2014), *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, ___ U.S. ___, 135 S. Ct. 1983 (2015), the

---

[8] As this case will require appointment of counsel and amendment of the Complaint, the Court declines to address at this time the nature and viability of Knox's state tort claim.

13

Fourth Circuit reiterated: "Qualified immunity protects government officials from liability for 'civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Saucier v. Katz*, 533 U.S. 194, 206 (2001), overruled in part by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Wilson v. Prince George's Cty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018); *O'Neal v. Rollyson*, 729 Fed. App'x 254, 255 (4th Cir. 2018) (per curiam); *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582-83 (4th Cir. 2017); *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013); *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012). And, "a government official who is sued in his individual capacity may invoke qualified immunity." *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013); *see Harlow*, 457 U.S. at 818.[9]

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818. An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. In other words, qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, 573 U.S. ___, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of

---

[9] The defense of qualified immunity does not apply to claims for injunctive or declaratory relief. *See Pearson v. Callahan*, 555 U.S. at 242-43 (affirming that defendants may not seek qualified immunity "in cases in which that defense is not available, such as … § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages"); *Lefemine v. Wideman*, 672 F.3d 292, 303-04 (4th Cir.) ("Claims for declaratory and injunctive relief are not affected by qualified immunity."), *rev'd on other grounds*, 568 U.S. 1 (2012); *accord Vollette v. Watson*, 937 F. Supp. 2d 706, 720 (E. D. Va. 2013).

demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Henry v. Purnell*, 501 F.3d 374, 377 n.2 (4th Cir. 2007) (en banc), (citation omitted), *cert. denied*, 565 U.S. 1062 (2011); *see also, e.g., Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004).

Qualified immunity is an "'*immunity from suit* rather than a mere defense to liability'...." *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Mitchell*). The immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Ussery*, 786 F.3d at 337 (quoting Mitchell, 472 U.S. at 526).

As the Supreme Court has explained, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Stanton v. Sims*, 571 U.S. 3, 5-6 (2013) (per curiam). Moreover, "[t]he protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231.

In *Scinto,* 841 F.3d at 235, the Court explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." (Citations omitted); *see also Cannon v. Village of Bald Head Island, NC*, 891 F.3d 489, 497 (4th Cir. 2018). Thus, the qualified immunity analysis

involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," *Saucier*, 533 U.S. at 201, and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant*, 677 F.3d at 662 (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)). The "two inquiries . . . may be assessed in either sequence." *Merchant*, 677 F.3d at 661-62; *accord Pearson*, 555 U.S. at 236 (judges may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first); *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018).

If an officer is shown to have violated the rights of a plaintiff, courts must then "evaluate whether the right at issue was 'clearly established' at the time of the officer's conduct.[] Accordingly, even when the facts in the record establish that the officer's conduct violated a plaintiff's constitutional rights, the officer still is entitled to immunity from suit 'if a reasonable person in the [officer's] position could have failed to appreciate that his conduct would violate those rights.'" *Wilson*, 893 F.3d at 219 (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991)) (other citation omitted); *see also Greene v. Feaster*, 733 Fed. App'x 80, 82 (4th Cir. 2018) ("Even when a prison official [is shown to have violated a constitutional right of a plaintiff], qualified immunity will shield him from liability as long as his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 170 (4th Cir. 2016)).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v.*

16

*Millender*, 565 US 535, 546 (2012) (citing *Creighton,* 483 U.S. 635m 638 (1987)). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id*. at 818-19.

To determine whether the right was clearly established, the court first must define the right at issue. *Scinto,* 841 F.3d at 235; *see Occupy Columbia*, 738 F.3d at 118. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, ___ U.S. ___, 135 S. Ct. 348, 350 (2014) (quoting *Creighton*, 483 U.S. at 640). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd,* 563 U.S. 731, 741 (2011); *see Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly,* ___ U.S. ___, 137 S. Ct. 548, 551 (2017) (*per curiam*); *San Francisco v. Sheehan*, ___U.S. ___, 135 S. Ct. 1765, 1774 (2015); *Plumhoff v. Rickard*, 572 U.S. 765, 778-79, (2014); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("To be clearly established, a right must be sufficiently clear that 'every reasonable official would [have understood] that what he is doing violates that right.'") (citation and some quotation marks omitted).

Notably, "a right may be clearly established by any number of sources, including a . . . case, a statute, or the Constitution itself." *Owens,* 767 F.3d at 399. Moreover, "[a] right need not be recognized by a court in a specific factual context before such right may be considered 'clearly established' for purposes of qualified immunity." *Wilson*, 893 F.3d at 221 (citing *Hope v. Pelzer*,

17

536 U.S. 730, 739 (2002)). Indeed, the Supreme Court has never required a "'case directly on point for a right to be clearly established.'" *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551); *see al-Kidd*, 563 U.S. at 741; *Crouse*, 848 F.3d, at 582-83. But, "courts are 'not to define clearly established law at a high level of generality.'" *Wilson*, 893 F.3d 221 (quoting *Kisela*, 138 S. Ct. at 1152); *see also Sheehan*, 135 S. Ct. at 1775-76. Therefore, courts are to "consider whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Adams*, 884 F.3d at 227 (quoting *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015)) (per curiam).

The central question is "whether it would be clear to a reasonable official that [the] conduct was unlawful in the situation . . . confronted" by the officer. *See Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015). To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant*, 677 F.3d at 665 (quoting *Layne*, 141 F.3d at 114); *see Bland*, 730 F.3d at 391 (stating that "[f]or a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right") (internal quotations omitted).

The contours of a prisoner's constitutional right under the Eighth Amendment to be free from excessive force at the hands of corrections staff has long been established. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*,

475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Defendants' generic assertion that they are entitled to qualified immunity is unavailing. The use of excessive force maliciously and sadistically to cause harm to prisoners has long been prohibited. *See Hudson v. McMillian,* 503 U.S. 1, 6-7 (1992). Obviously, defendants dispute the facts underpinning Knox's claim of unprovoked assault, and they argue that he initiated the attack, prompting their use of reasonable force to gain control over him. However, I cannot resolve the factual dispute at this juncture. Defendants are not entitled to qualified immunity based on the contested material facts of this case.

Although this case shall proceed, Knox's motion for a temporary restraining order or preliminary injunction (ECF 27; ECF 29), filed on April 23, 2018, shall be denied. The incident occurred in May 2017, more than 18 months ago. Even assuming that as recently as May 15, 2018, Reed called Knox a "fucking pest" and stated "leave this whole assault thing alone and we'll stop bothering you" or else (ECF 29, ¶¶ 3-4), Knox has suffered no actual injury after this threat. Nor has he been subjected to a second adjustment proceeding resulting from the original incident.

A preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), which requires a movant to demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama,*

*Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (per curiam). Such a showing is not apparent here.

## IV. Conclusion

For these reasons, Knox's request for injunctive relief is denied; defendants' Motion (ECF 22) is granted as to plaintiff's damages claims against the State and the individual defendants in their official capacities, based on sovereign immunity, but otherwise denied. And, Knox's previous request for appointment of counsel (ECF 10) is granted. A separate Order follows.


Date: December 7, 2018 _____/s/_____
Ellen L. Hollander
United States District Judge